The opinion of the court of appeals was delivered by
(Llmbe, J.
The complainant, Samuel F. Fisher, was shown to be the bona fide holder of six bonds of the Morris Canal and Banking Company, the defendants, and the question upon which the casé on this appeal mainly turns, is, whether the honest acquisition of these securities, without notice of any defect in the title of the seller, if a defect there was, confers on him a title similar to that acquired by a bona fide holder of money, bills of exchange, and promissory notes, payable to bearer. So far as we are aware, this is a case of the first impression, and it is certainly one of no little importance. Similar bonds have been issued, within a few years, by our numerous railroad and canal companies, to an immense amount, and are daily sold by the brokers and ' others, and passed from hand to hand by delivery, without any formal assignment, and without inquiry as to the title of the possessor.
The case has been elaborately and ably argued on both sides. On behalf of the appellants, it was insisted that these bonds being under seal, are in law specialities, and although in terms payable to- bearer,1 if they are assignable by delivery only, it is by force of our statute, whieh leaves them *698 subject, in the bands of the assignee, to all the equities 'to which they were liable in the hands of the assignor. Rev. Stat. 801. That such is the law, in the case of ordinary bonds, cannot be questioned. By the common law, such bonds cannot be assigned, so as to.give a right of action to the assignee, although payable in terms to an assignee, or bearer. Glyn v. Baker, 13 East. 509 ; Clark v. Farmers’ Man. Co., 15 Wend. 256.. Our. statute, however, authorizes an assignment, whether the bond is or is. not payable in terms to an assignee. Sheppard v. Stiles, 2 Hal. 90. And such assignment, it has.been held, may be by a delivery for a valuable consideration, without any writing. Allen v. Pancoast, Spen. 68. The mere insertion, therefore, of words making these bonds payable on their face to a bearex-', is by no means decisive of the question now in dispute. Nor do we think it would necessarily follow that they would be subject to whatever equitable defence might be made against them in the hands of the assignor, if they were not legally assignable so that the assignee could sue on them in his own name. Smith, in his note to the case of Miller v. Race,. Smith L. C. 363, seems to consider that such- would be the result; and no doubt the ability of the holder to sue in his own name, is essential to render an instrument negotiable, in the full sense of that expression. But courts of equity and courts of law protect the interest of a bona fide assignee. ■ If, however, the assignee takes no legal, but only an equitable title, they protect also the, equities existing at the time of the assignment between the maker of the instrument and the assignor. If the bonds in question are transferable by delivery, so as to confer a complete title in the possessor, it-is not as instruments negotiable; under the law of merchants as bills and notes are, .but as instruments of a peculiar-character, expressly designed to be passed from hand to hand, and by a common usage known-to all, actually so transferred. That they are-on their face, payable to bearer, is, of course, an important and perhaps indispensable circumstance’to show that this ivas in fact their design, and - that thej' are so used. . But the. .usage..itself, and in a case *699 like this, where the party issuing them is before the court denying the holder’s title, the manner in which they were issued and used by the company itself, arc the important facts which must have the principal infinen.ee in determining their true character. If, in point of fact, they are of such a character that a full title was intended to be conferred on any person who became the bona fide possessor of them, and this intention was not in contravention of the law, the original maker has no equity against the assignee. By the act of issuing a security, which, although in' some respects like an ordinary bond, was in its main, characteristic of being designed to pass freely from hand to hand, and of being so held oat to the world, essentially different, all such equities were designedly relinquished, and ought not to be regarded by courts of law or of equity.
That under ordinary circumstances, the property of bank notes and of bills and promissory notes payable on their face, or by a blank endorsement to a bearer, follows the possession, has been long settled. By analogy to this class of cases, the exigencies of business have from time to time introduced other securities into the same category. The court of King’s Bench seems to have hesitated to recognize India bonds as belonging to it. Glyn v. Baker. But parliament immediately interfered and declared them negotiable instruments. Exchequer bills were so regarded, in the case of Wookey v. Pole, 4 Barn, and Ad. 1. In the case of Gorgier v. Mieville, 3 Bar. and Cress. 45, bonds of the king of Prussia, which were shown to be ordinarily passed from hand to hand by delivery, and so designed, were held to be like money or bills, so as to give a bona fide possessor the legal title. And in the case of Lang v. Smyth, 7 Bing. 284, the same principle was applied to the case of instruments issued by the government of Naples, although in that ease they were held not to be negotiable, because it was found that they did not- usually circulate without a certificate, which did not accompany them. " Parsons, in his .recent work on contracts, vol. 1, page 240, expresses the opinion *700 that the common bonds of railroads falL within the reasoning’ and authority of these cases.
The manner in which these bonds are engraved, with coupons making the interest payable half yearly to the bearer of them, and all the evidence before us, conspire to show that the company which issued them, and which now disputes the title of the holder upon the ground that they put them into the hands of the seller for a special purpose, which, did not authorize him to dispose of them as he -did, really intended them to circulate, as in fact they do. This design is indeed quite as apparent as if it was engraved on their face in express words. The objection now made, that the legal character of the instrument adopted is such as to frustrate this design, certainly comes with a bad grace from the party which put them in circulation. Even as between third parties, we suppose the common usage to transfer them- by delivery, without inquiry as -to the title of the- transferrer, would justify us in holding these securities to differ from' common obligations, in being so far negotiable that the bona fide possessor shall be held to have a good title-. But the case is still stronger against the party which made and issued them, with full knowledge of the prevailing usage, and with the manifest design that they should be so circulated, To permit such parties to dispute this result of the usage, would be to permit them to take advantage of their own wrong. And besides, the obvious interest of the companies is, that these bonds should be saleable, free from all questions of equity. They are generally issued for the express purpose of raising money by their salé. To declare them subject to the equities existing in the case of ordinary bonds, upon every transfer of them, would be to strike a blow at the credit of the great mass of these securities now in the mai-ket, the consequences of which it would be impossible to predict.
We are, therefore, of opinion that the title of the present possessor of these bonds must be held to be complete. His right to proceed on the mortgage, in the manner adopted, follows as a necessary consequence. As to the objections *701 that the bonds were not issued for any purposes authorized by the stockholders and directors, and that they are illegal, fraudulent, and void, and' that the bill of complaint is not .properly drawn, it is only necessary to express our concurrence in the conclusions to which the master came, and in the reasoning upon which he founded them.
• This view of the case renders it unnecessary to enter at large upon the investigation of the question so elaborately discussed by counsel, whether Mr. Lewis had a right to sell the bonds as he did. Some of the views taken by the master, in his very able opinion on this subject, seem questionable. If the bonds in dispute ought to be considered as placed in Lewis' hands by way of pledge, it is probablj' because they were securities usually sold in the stock market, and understood by the parties to be designed for that use; and not because a party’s ordinary bond or mortgage, deposited;as a collateral, could be so regarded. No case was produced where the debtor's own obligation has been held to be a pledge for a debt due by simple contract. Nor do we think it clear that even a third party’s bond or mortgage, deposited by way of a collateral, or as a pledge, can be sold by the pledgee, in default of payment, after notice to the pledger, unless a known usage or express agreement to do so is shown. But it is not intended to express any decided opinion on these questions. For the reasons assigned, the decree appealed from mast be affirmed, each party to pay their own costs.
Decree affirmed unanimously. ■